Thank you, Judge Silverman, and may it please the Court, my name is Mark Caldwell. I'm here to represent Ms. Payton this morning in this Social Security disability case. I will keep track of my own time, but I'm going to try to reserve two minutes for rebuttal if I can. The initial issue in this case is whether the agency's determination of Ms. Payton's work capacities is supported by substantial evidence when it is founded upon the opinion of a doctor who never laid eyes on her, who gave an opinion after literally hundreds of were submitted in connection with the request for hearing, who did not consider the treating physician's opinions, and of course in this case we've got four, Dr. Raju, Dr. Alvarez, Dr. Page, and Dr. Anthony, and who gave some explanation, but an explanation based upon a delimited record. In this case, it is interesting because the ALJ's reliance upon the reconsideration reviewer's opinion contains its own refutation. The ALJ discounted the initial reviewer's opinion because the initial reviewers did not have the opportunity to review all of the evidence. That very same rationale applies to the reconsideration reviewer's opinion. Mr. Caldwell, suppose we agree with you, then what do we do? Do we send it back and have the ALJ reconsider, or what do we do? No, Judge. What should happen is this court should credit the opinions of the four treating physicians that I just mentioned and remand this matter for payment of benefits. The most recent case that this court addressed that I think applies to this situation is Marsh. In Marsh, the treating physician, it's in my Rule 20HA letter, in Marsh the treating physician gave an opinion that the claimant would be unable to work. In that case it was somewhat different, however, because the administrative law judge just didn't mention it at all, and so this court remanded for consideration of that. We don't have that here. Here we have a situation where the ALJ gave reasons, but they're invalid reasons. So I'm switching now from talking about the invalidity of the non-examining, non-treating physician, and I'm switching now to talking about the treating physicians that I just talked about. And that should be the basis for a remand for payment of benefits. A similar case to Marsh is the case of Beneke. In Beneke as well, there were statements from various physicians that said the claimant would be unable to work, and this court remanded for payment of benefits on that basis, even though there wasn't vocational expert testimony based upon those opinions, because it was obvious that if those opinions were credited that the claimant would be unable to sustain work activities. And that's a key word here, sustain work activities, because that's what the commissioner is obliged to do, to evaluate when it looks at the claimant's work capacities, their abilities to sustain work activities on a regular and continuing basis. And that's in Social Security Ruling 96-8P. It's also in the Lester decision. So that should be the basis for this court's remand for determination of benefits in this case. Now, the ALJ gave some reasons, unlike the Marsh case, for discounting the treating physician opinions. The ALJ stated first, well, those opinions are on an issue reserved to the commissioner. That's not true. The regulations say that if a physician simply says, you're disabled, we will not give that opinion any special significance. And I agree with that, that that isn't what these physicians did. These physicians laid out the impairments from which this woman suffers, and these physicians said that she would not be able to sustain gainful employment as a result. So that reason is invalid. The ALJ then said that the treating physician's opinions were not supported by the evidence. Now, there's a couple problems with that. One, the ALJ is in a position to give an independent evaluation of the evidence. Now, I'll give you one example of that. The ALJ looked at this lady's CD4 counts. They're called T cell counts for people who suffer from HIV. And he said, well, those are stable. And so therefore, she's asymptomatic. Well, I cite some medical literature in my briefs that say that just isn't true. CD4 counts are an indication of the person's susceptibility to what they call opportunistic diseases, usually pneumonia or something along those lines. But it's difficult. Forgive me for interrupting, counsel, but it's difficult. She has some Can I ask you to speak a little louder for me? Sure. Forgive me. It's difficult because she has some very, what I would say is very serious diagnoses. And there is quite a range of symptomatology associated with them. So just because she has HIV or hep C, certainly very serious. But sometimes people don't really have much in the way of functional limitations with those particular diagnoses. So when I look at the four treating physicians, I see a lot of diagnoses but light on an explanation of what she can really do or how they're affecting her, particularly because some of these are being successfully treated. I think you've made a good point there in terms of two things. One, I agree with you that a diagnosis in and of itself is not equivalent to disability. HIV, there's all sorts of people walking around who are HIV positive and who are functional. I agree. But the key phrase you used there was successfully treated. Successfully treated has to be taken in context. Successfully treated, for example, as we were just discussing in the HIV context, means that the CD4 counts are stable and the woman therefore is hopefully, or Ms. Payton, is hopefully not susceptible to these opportunistic diseases. That's successful. Right. And so, again, of course, your time is ticking. Isn't that why, in this case, her credibility, her own description of how these diagnoses are impacting her becomes terribly important, doesn't it? I think your claimant's credibility always factors into it. But I'm always concerned when an ALJ leaps to the conclusion, as this ALJ did regarding two of the doctors, that they uncritically accepted the claimant's reported symptoms. The Ganim case, this Court recently decided, addresses that. And there isn't a shred of evidence that that's true in this case. There's no indication whatsoever that any one of these four doctors just swallowed whole what this woman had to say about her symptoms and gave no independent judgment and effectively misrepresented her condition to the agency. And that's what this ALJ is accusing these doctors of doing. There has to be some factual basis for such an assumption and there is no such factual basis in this case. I'm coming up on my time. Shall I reserve for rebuttal? Sure. Yes, thank you very much, Mr. Caldwell. Thank you. Good morning. Good morning, Your Honors. Laura Rigel-Boltz, Acting Commissioner of Social Security. May I please the Court? In this case, the ALJ was faced with four opinions from, or opinions from four different doctors that were vague and conclusory. And he had to decide what weight he was going to give those four opinions. At the same time, he had two opinions from reviewing doctors who had the opportunity to review all the evidence, particularly Dr. Caldwell. He reviewed the bulk of the evidence because he gave his opinion in August of 2012. So just to be clear, when you say that physician, the reviewing physicians reviewed the evidence, they reviewed the written medical record, right? They did not examine? That's correct. Yes. So the doctor, or the ALJ took these six doctors' opinions and pretty thoroughly reviewed them and decided what weight to give them. The ALJ first talked about Dr. Alvarez and decided that his opinion was entitled to little weight. He gave reasons, pretty specific reasons. He said that basically that the explanation a doctor gives to support his opinion is a factor. And in this case, Dr. Alvarez didn't state what the evidence was that he was basing his opinion on. The ALJ also noted that the opinion was unsupported by Dr. Alvarez's own notes. For example, in July of 2009, she said she was doing well. In April of 2010, she only had some left flank. Her left flank was only somewhat tender. There were really no much in objective findings. And in September of 2010, he said that the medications had improved her symptoms and he didn't notice any objective findings. And so because of this lack of findings or lack of objective evidence in his treatment notes, the ALJ reasonably concluded that it wasn't worth much weight. With regard to Dr. Raju, Dr. Raju said that twice, in September of 2010 and April of 2011, that Ms. Payton was unable to gain or sustain employment at this time. And again, the ALJ reviewed that opinion and evaluated it against the evidence of record, including Dr. Raju's own treatment notes, notes that showed that she was stable, notes that showed she had few abnormalities on examination, and notes that she reported herself that she was doing better. So then the ALJ went to Dr. Anthony's opinion and again decided that it was entitled to her, that her pulmonary condition would likely interfere with employability. And then again in February of 2010, he basically said the same thing. And the ALJ acknowledged both of those opinions and gave reasons why he accorded that opinion little weight. All four of these physicians were not only examining physicians, they were treating physicians. Yes. And the two experts that the ALJ relied upon simply looked at the records, correct? Correct. Did not even have the opportunity to ask Ms. Colton, how are you feeling, how are you doing? That's correct, Your Honor. But I'd like to point out that the state agency physicians who gave these opinions looked at more of the records than these treating physicians did. And in fact, Dr. Robbins is the most recent opinion in the record. And he looked at all four of these opinions and discussed why they weren't supported by the record. And the ALJ noted that in his decision. And The ALJ decided this case in, what, 20? April, I think, of 2013. And in 2014, a new Ninth Circuit case came out called Burrell, is that right? I'm sorry? A new Ninth Circuit case called Burrell came out after this case was heard. Yes. What does that do to this case? I don't think that it really changes anything, Your Honor. I think that the ALJ did a very good job in this case of reviewing this evidence and deciding the case. He went painstakingly through each one, through the credibility factors. He went through all of the different impairments that she was claiming and gave really specific reasons, I think at least ten reasons why he found that she wasn't disabled. And then he went through all of the six opinions from these different doctors and did that as well. So I don't see where the ALJ, the ALJ, is going to be in this case. Did he use the standard of clear and convincing? I'm sorry? I'm sorry. Did he use the standard clear and convincing in his ruling? Oh, yes. Yes. He gave clear and convincing. No. Did he invoke it? Did he say, I find by clear and convincing? No. He didn't use those exact words. But I think it's easily inferred from the length to which he evaluated all of the evidence and the numerous reasons that he gave. How do we know he didn't apply a preponderance standard? You mean because he didn't say it in the record? Yes. Well, I think that it's clear from the way that he evaluated the evidence that he was using a very strict standard in deciding what weight to give her symptom complaints and what weight to give the treating physicians and reviewing physicians' opinions. I'd like to talk about her credibility a little bit. As I said before, I think there's about at least 10 reasons why, specific reasons, why he gave to find that Ms. Payton was incredible. He talked about her HIV being stable and under good control. He talked about how treatment for her respiratory symptoms also improved her condition. He talked about her non-compliance with regard to her continuing to smoke and her non-compliance with regard to her narcotics contract with Dr. Page. He talked about the normal findings, and I have sites if you would like to hear them. Dr. Raju regularly found that Ms. Payton was comfortable, well-appearing, and in no acute distress, and that she had few abnormalities in her physical examinations. I can give you sites of the record at pages 456, 458, 460, 463, 476, 556, 736, 745. These are a lot of treatment notes showing few physical abnormalities in her examination. Can I ask you one other question? Following up on what I asked Mr. Caldwell, suppose we agree with him that for whatever reason these findings, that the ALJ improperly relied on the wrong doctors. What do we do then? Well, I think that you have to remand it for further proceedings, Your Honor. Why do we not credit the doctors he should have followed? I think there's significant doubt as to whether or not Ms. Payton is really disabled, especially given... This is your opinion. I'm sorry? This is your opinion, that there's significant evidence that she's not disabled. I think that the record shows that there are, there's significant doubt about whether or not she's disabled, and I think that there are also some unresolved issues that need to be addressed. Like what? Well, for example, one of the doctors, which gave an opinion, talked about the fact, I talked about the fact that her symptoms would likely interfere with employability, which just doesn't seem to be really an opinion that she's totally disabled. I think that that would have to be fleshed out a little bit more. Also there's issues regarding her various different statements to the different doctors about how she was doing. She pretty regularly said that she was doing well. All of those were present on the record and available for the ALJ to ask her about at the hearing that we're reviewing, correct? Correct. You want a second bite at the apple for the agency? Well, I think that, as I said before, that there's significant doubt, that the record shows that there's significant doubt that Ms. Payton is disabled, and for that reason it should go back for further proceedings. I see my time is almost out. If you have any more questions, the commissioner would like to respectfully ask this court to affirm her decision. Thank you for your time. Thank you, Ms. Bowles. Mr. Caldwell, you get the last word. Thank you, Judge Silverman. I'd like to make two factual corrections, if I may. I can't remember whether it was Judge Hawkins or whether it was the commissioner's counsel who said that the ALJ relied upon two non-examining physicians. That is factually incorrect. The ALJ specifically discounted the opinion of the initial non-examining physician, again, for reasons, as I said, that apply equally to the doctor that he did rely upon, and that is that that doctor didn't have the chance to review all of the records. By my count from ER 658 plus, those are the records that were submitted in connection with the request for hearing. All of those records, by definition, could not have been reviewed by that doctor. The second misstatement I would respectfully submit is that the reconsideration doctor looked at the treating doctor's opinions. That is not true from this record, at least. The doctor's form is at ER 66-67, and it has no reference whatsoever to consideration of the treating physician's opinions. If there are no other questions? Thank you, Mr. Caldwell. Thank you. Ms. Bolts, thank you. The case just argued is submitted. Good morning.
judges: Hawkins, Silverman, Christen